# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| |
|---|
| **DISTRICT OF COLUMBIA,** |
| **Plaintiff,** |
| v. |
| **CHRISTOPHER L. WEST, et al.,** |
| **Defendants.** |

Civil Action 09-00334 (HHK)

## MEMORANDUM OPINION

The District of Columbia ("the District") brings this action against Christopher L. West and James E. Brown and Associates, PLLC, (collectively, "West") and Maria E. Blaeuer (collectively, "defendants"), seeking $1417.50 in attorneys' fees under a fee shifting provision of the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. 1415(i)(3)(B)(i)(II). The District claims it is entitled to an award of attorneys fees because (1) it was the prevailing party in the administrative proceeding that defendants pursued on behalf of their client A.C., (2) the administrative complaint defendants brought on A.C.'s behalf was unreasonable and without foundation when filed, and (3) the litigation was pursued when the litigation clearly became unreasonable and without foundation.

The District and defendants have cross-moved for summary judgment.[1] Upon consideration of the motions, the oppositions thereto, and the record of this case, the Court concludes that defendants' motions for summary judgment [##17, 19] should be granted and the District's motion for summary judgment [#7] should be denied.

## I. BACKGROUND

**A. Statutory Background**

Congress enacted the IDEA to "ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for further education." 20 U.S.C. § 1400(d)(1)(A). To receive funding under the IDEA, States and the District of Columbia must ensure that "[a]ll children with disabilities residing in the State . . . and who are in need of special education and related services, are identified, located, and evaluated." 34 C.F.R. § 300.111(a)(1)(i). "A free appropriate public education is available to all children with disabilities residing in the State between the ages of 3 and 21, inclusive, including children with disabilities who have been suspended or expelled from school." 20 U.S.C. § 1412(a)(1)(A). The IDEA's free and appropriate public education ("FAPE") provision entitles each disabled student to an IEP and educational services tailored to the unique needs of that student. *See id.*

---

[1] Before filing her motion for summary judgment, defendant Blaeuer filed a motion to dismiss [#12], which D.C. moved to strike [#13] on the grounds that its filing was inconsistent with the scheduling order in this case. In the alternative, the District argues that Blaeuer's motion to dismiss should be regarded as her opposition to the District's summary judgment motion. Blaeuer's cross-motion for summary judgment and opposition to the District's motion for summary judgment [#19] both renews her motion to dismiss and incorporates it by reference. Accordingly, the Court denies the motion to strike as moot and treats Blaeuer's motion to dismiss as her cross-motion for summary judgment and opposition to the District's motion for summary judgment.

§ 1414(d)(2)(A) ("At the beginning of each school year, each [State] shall have in effect, for each child with a disability in [its] jurisdiction, an individualized education program"); 34 C.F.R. § 300.323(a).

Parents who disagree with the school's provision of a FAPE to their child may request an administrative hearing before an impartial hearing officer. 20 U.S.C. § 1415(f)(1)(a). A decision made by a hearing officer "shall be made on substantive grounds based on a determination of whether the child received a free appropriate public education." *Id.* § 1415(f)(3)(E). The hearing officer's determination may be challenged in federal district court by an "aggrieved" party. *Id.* § 1415(i)(2). The IDEA gives the court discretion to award reasonable attorneys' fees to a "prevailing party." *Id.* § 1415(i)(3)(B).

**B. Factual Background**

Defendants Christopher West and Maria E. Blaeuer are attorneys licensed to practice in the District of Columbia, and were employed at relevant times by defendant James E. Brown & Associates, PLLC, a law firm.[2] West and Blaeuer represented A.C., who the District of Columbia Public Schools ("DCPS") had identified as a student with a disability. During the 2007-2008 school year, A.C. was a student at Eastern Senior High School in the District. On March 19, 2008, defendant Blaeuer wrote a letter to Eastern's Acting Principal and Acting Special Education Coordinator, requesting that a Multidisciplinary Team (MDT) meeting be held to develop an IEP for A.C. Pl.'s Mot. Summ. J. Exh. D (Letter from Blaeuer dated March 19,

---

[2] Blaeuer's employment with James E. Brown and Associates ended on September 12, 2008. Blaeuer's Mot. Dismiss at 8 n.1.

2008).³ On April 1, 2008, a meeting was convened and DCPS developed an IEP. Exh. E (IEP dated April 1, 2008). On June 6, 2008, at a meeting attended by A.C., her mother, a special education advocate, and a special education teacher, A.C., then 18 years old, stated that she no longer wished to attend Eastern.⁴ A.C. was granted a certificate of completion and, as of that date, was no longer a DCPS student.

Blaeuer wrote DCPS on July 30, 2008, and August 6, 2008, stating that A.C. wished to revoke her certificate of completion and return to school. Each letter also requested that an MDT be convened to create a new IEP. Exh. A (Letter from Blaeuer dated July 30, 2008; Letter from Blaeuer dated August 6, 2008).

On August 18, 2008, Blaeuer filed a due process complaint with the Student Hearing Office of the Office of the States Superintendent of Education, on behalf of A.C. and her mother, alleging that DCPS denied A.C. a FAPE by (1) "inappropriately exiting her from Special Education;" (2) developing an inappropriate IEP; and (3) failing to convene an MDT at the student's request. Exh. A (Administrative Due Process Complaint Notice).

On September 8, 2008, DCPS responded to the complaint, denying all allegations that A.C. was denied a FAPE. DCPS' answer stated that (1) A.C. no longer wished to attend school, terminated her special education services, and had not sought reenrollment; (2) A.C.'s most recent IEP was dated April 1, 2008, which was more recent than the one dated April 22, 2007, referenced in the complaint; and (3) DCPS does not convene MDTs for students no longer

---

³ Unless otherwise specified, all exhibits referenced are exhibits to the District's Motion for Summary Judgment [#7].

⁴ The District and Blaeuer characterize this meeting as an MDT, while West states that A.C., a special education teacher, and a special education advocate "met informally to discuss a certificate of completion." West's Undisputed Facts 8. Whether this meeting was technically an MDT is irrelevant to the motions before the Court.

4

enrolled, and Eastern's special education coordinator would be "more than willing to convene a MDT meeting once the student enrolls in school." Exh. B (DCPS' Response to Administrative Due Process Complaint Notice at 1-2).

On September 23, 2008, an administrative hearing was held, at which Defendant West represented A.C. and her mother. During opening statements, West withdrew his claim that DCPS created an inappropriate IEP, but pursued the other two claims, stating that "the remedy that we're seeking is that DCPS convene an MDT/IEP meeting within 10 school days to sit down with the team and develop a new IEP, discuss and determine what testing is going to be needed and to discuss and determine placement." Exh. G (September 23, 2008, Hearing Transcript at 6-7).

During his opening statement on behalf of DCPS, attorney Daniel Kim explained that "[t]he issue is that the student is not enrolled in school. If the student enrolls in school, DCPS would be happy to convene the MDT meeting." *Id*. West indicated that according to A.C.'s mother, she tried to enroll A.C. in school, but had been unsuccessful. Expressing concern that if A.C. was not enrolled, he may not have jurisdiction over the case, Hearing Officer Banks continued the hearing so that A.C. could enroll before the hearing proceeded further.

A second due process hearing was held on October 9, 2008. At the beginning of the hearing, West confirmed that A.C. had enrolled and was attending Eastern High School. He then stated that the issue outstanding was that DCPS "failed to convene an MDT meeting at the request of the student for the purposes of trying to get her back into school and to review assessments and to determine appropriateness of . . . her IEP." Exh. H (October 9, 2008, Hearing Transcript at 5). In response, Kim stated that "DCPS is more than willing to convene an MDT meeting upon parental or student request," but that no request had been made since A.C.'s reenrollment. *Id*. at 6.

5

At the hearing, A.C.'s mother, Stacy Carter, testified that A.C. left school in June because she did not want to attend Eastern anymore. According to Carter, A.C. changed her mind in late July and wanted to go back to school. Carter stated that she first tried to re-enroll A.C. on August 25, 2008, but was told that she "couldn't do it." *Id.* at 13. DCPS called Joe Berdin, Special Education Coordinator at Eastern Senior High, to testify. Mr. Berdin said that neither A.C. nor Carter had requested an MDT since A.C.'s reenrollment, but that he would be willing to convene an MDT meeting upon request.

On October 17, 2009, Hearing Officer Banks issued his decision, which dismissed the complaint with prejudice. His decision read, in relevant part:

> At the hearing, there was no testimony that DCPS terminated Petitioner's services. Rather, Petitioner's mother testified that Petitioner after reach the age of majority elected to receive a certificate of attendance at the end of the 2007-2008 school year and to leave school. There was no testimony as to the inadequacy of Petitioner's April 1, 2008 IEP. In fact, neither Petitioner's counsel nor Petitioner's mother . . . ever made reference to Petitioner's IEP. And there was no testimony that Petitioner ever requested an MDT meeting. In fact, when the *Complaint* was filed on August 18, 2008, Petitioner had not yet decided to reenroll as a DCPS student. The Hearing Officer concludes that Petitioner has failed to meet her burden as to any of the allegations in the *Complaint.*

Exh. H (Hearing Officer's Decision at 3).

Regarding attorneys' fees, Hearing Officer Banks concluded that counsel filed the complaint without foundation and continued to litigate after it was apparent that A.C. was entitled to no relief from the hearing officer. Specifically, the Hearing Officer Decision stated, in relevant part:

> [B]efore the *Complaint* was filed, Petitioner had voluntarily withdrawn from DCPS. On the first hearing date, it became apparent that Petitioner had not yet reenrolled. Once she reenrolled, Petitioner's counsel continued to assert that DCPS failed to convene an MDT meeting upon request. However, Petitioner did not testify, and, thus, never confirmed that she ever requested an MDT meeting. Petitioner's mother admitted that Petitioner withdrew

> from DCPS in June and did not reenroll until one week before the second hearing date. Thus, when the *Complaint* was filed, Petitioner was not a DCPS student, and there was no testimony that an MDT meeting was requested after Petitioner reenrolled. Petitioner's counsel made no reference whatsoever to the only potentially viable claim in the *Complaint*, that DCPS failed to develop an appropriate IEP. In fact, he did not even disclose the April 1st IEP as a proposed exhibit. Finally, Petitioner's counsel offered no evidence that DCPS terminated Petitioner's special education services.

*Id.* at 4 (footnote omitted). Defendants did not appeal the Hearing Officer's Decision.

## II. ANALYSIS

The IDEA provides that the court has discretion to award reasonable attorneys' fees

> to a prevailing party who is a State educational agency or local educational agency against the attorney of a parent who files a complaint or subsequent cause of action that is frivolous, unreasonable, or without foundation, or against the attorney of a parent who continued to litigate after the litigation clearly became frivolous, unreasonable, or without foundation . . ."

20 U.S.C. § 1415(i)(3)(B)(i)(II). "[I]t is the district court in an action such as this, and not the hearing officer in the administrative proceeding, which determines prevailing party status for purposes of awarding attorney's fees under the IDEA." *District of Columbia v. Straus*, 607 F. Supp. 2d 180, 183 (D.D.C. 2009).

The District seeks attorney fees on both of the grounds set forth in the IDEA's fee shifting provision. The District argues first that defendants' complaint was frivolous, unreasonable, and without foundation because "Defendants filed the due process complaint after A.C. had withdrawn from school, had a valid IEP and had failed to re-enroll in school at the time the due process complaint was filed." Compl. ¶ 38. The District also contends that because "Defendants continued to litigate after DCPS informed them that A.C. had voluntarily withdrawn from school, that she had a valid IEP dated April 1, 2008 and that even as of the October 9, 2008 hearing, A.C. had not requested an MDT meeting, Defendants' continued pursuit of litigation in the administrative proceeding was frivolous, unreasonable, and/or without foundation." Compl. ¶ 41.

7

## A. The District Is A Prevailing Party.

The Court must first determine whether the District is a prevailing party. The District of Columbia Circuit has articulated a three-part test for determining whether a litigant is a "prevailing party" for purposes of the IDEA: "(1) there must be a 'court-ordered change in the legal relationship' of the parties; (2) the judgment must be in favor of the party seeking the fees; and (3) the judicial pronouncement must be accompanied by judicial relief." *District of Columbia v. Straus*, 590 F.3d 898, 901 (D.C. Cir. 2010) (quoting *Thomas v. Nat'l Sci. Found.*, 330 F.3d 486, 492-93 (D.C. Cir. 2003)).

Courts in this and other Circuits have determined that a Hearing Officer's dismissal on the merits of a due process complaint that has not been appealed warrants a finding that a state educational agency or local educational agency is a prevailing party. *District of Columbia v. Ijeabuonwu*, 631 F. Supp. 2d 101, 105 (D.D.C. 2009); *see also A.R. v. N.Y. City Dep't of Education.*, 407 F. 3d 65, 76 (2nd Cir. 2005). Because Hearing Officer Banks dismissed the due process complaint with prejudice on the merits, the Court finds that DCPS was the prevailing party in this case.

## B. The Complaint Defendants Filed Was Not "Frivolous, Unreasonable, or Without Foundation" Nor Did The Litigation Become "Frivolous, Unreasonable, or Without Foundation."

The Court next considers whether the defendants "file[d] a complaint or subsequent cause of action that is frivolous, unreasonable, or without foundation." To make this determination, "a district court must focus on the question whether the case is so lacking in arguable merit as to be groundless or without foundation rather than whether the claim was ultimately successful." *Sullivan v. School Bd. of Pinellas Co.*, 773 F.2d 1182, 1189 (11th Cir. 1985).

The due process complaint raised three claims: DCPS denied A.C. a FAPE by (1) inappropriately exiting her from Special Education; (2) developing an inappropriate IEP with goals that did not fit A.C.'s present level of achievement and abilities; and (3) failing to convene an MDT upon request to discuss her return to school. The Court addresses each claim in turn.

The District argues that the first claim, that A.C. was not properly evaluated before she left school and was given her certificate of completion, was frivolous, unreasonable, or without foundation because notes from the June 6, 2008, MDT show that A.C., then 18 years old, was "adamant about wanting to graduate" and decided to leave school, as her mother's testimony at October hearing confirmed. According to Blaeuer, because A.C. was not evaluated to determine that she was no longer a child with a disability before she left school as the IDEA requires, A.C.'s special education services were inappropriately terminated.[5] The Court agrees with Blaeuer that this was a proper claim.

The IDEA provides that "a local educational agency shall evaluate a child with a disability in accordance with this section before determining that the child is no longer a child with a disability," 20 U.S.C. § 1414(c)(5)(A), unless the child's eligibility is being terminated "due to graduation from secondary school with a regular diploma, or due to exceeding the age eligibility for a free appropriate public education under State law." 20 U.S.C. § 1414(c)(5)(B)(i); 34 C.F.R. § 300.305(e). The evaluation required is "a summary of the child's academic achievement and functional performance, which shall include recommendations on how to assist the child in meeting the child's postsecondary goals." 20 U.S.C. § 1414(c)(5)(B)(ii); 34 C.F.R. § 300.305(e);

---

[5] Defendants West and James E. Brown & Associates, PLLC argue that the complaint was not frivolous, but focus their arguments on the claim that DCPS refused to convene an MDT meeting.

*see V.S. ex rel. A.O. v. Los Gatos-Saratoga Joint Union High School Dist.*, 484 F.3d 1230, 1234 (9th Cir. 2007) (finding that because the child "was officially classified as a 'child with a disability' . . . , the school at that point, and prospectively, had only two choices: 1) provide [the child] services in accordance with an appropriately developed IEP, . . . ; or 2) properly complete the assessment in order to find her ineligible. 20 U.S.C. § 1414(c)(5)."). Because A.C. did not graduate with a regular diploma or exceed the age for eligibility, the Court cannot say defendants had no grounds for the claim that she should have received an evaluation before leaving school.

The second claim in the due process complaint was that A.C.'s IEP, updated most recently on August 22, 2007, was inappropriate. The District argues that this claim is frivolous because it disregards the IEP developed on April 1, 2008. In response, Blaeuer argues that the April 1, 2008, was invalid because it was held in the absence of A.C's mother, which is itself a violation of the IDEA. Although the Court notes that the alleged inadequacy of the April 1, 2008,' IEP may have been a more appropriate claim to raise in the due process complaint, and that the complaint could have at least made reference to the existence of the April 1, 2008, it does not find that the claim regarding the inadequacy of A.C's IEP was frivolous, unreasonable, or without foundation.

Defendants' third claim was that DCPS denied A.C. a FAPE by failing to convene at MDT at her request. The District maintains that this claim was baseless because at the time defendants requested that an MDT meeting be convened, A.C. was not a DCPS student. Defendants contend that A.C. was an entitled to an MDT even though she was not an enrolled DCPS student because residency, not enrollment, triggers an educational agency's obligation to provide a FAPE. Defendants' argument is well-taken.

Under the IDEA, "the obligation to deal with a child in need of services, and to prepare an IEP, derives from residence in the district, not from enrollment." *James ex rel. James v. Upper Arlington City School Dist.*, 228 F.3d 764, 768 (6th Cir. 2000). Specifically, the "IDEA provides that '[a] free appropriate public education is available to all children with disabilities *residing in the State* between the ages of 3 and 21, inclusive, including children with disabilities who have been suspended or expelled from school.'" *Hawkins ex rel. D.C. v. District of Columbia*, 539 F.Supp.2d 108, 115 (D.D.C. 2008) (quoting 20 U.S.C. § 1412(a)(1)(A); "It is undisputed that D.C. is a resident of the District of Columbia, and hence, DCPS must fulfill its IDEA obligations for this student."). Accordingly, the Court finds that A.C's enrollment status at the time of the MDT requests did not render the claim regarding DCPS' failure to convene an MDT frivolous, unreasonable, or without foundation.

As for the second basis for the District's fee request, the Court finds that defendants did not "continue[] to litigate after the litigation clearly became frivolous, unreasonable, or without foundation." Although defendants never presented any evidence to support the claim regarding DCPS' failure to evaluate A.C. before she left school and withdrew the claim that her IEP was inappropriate, the claim that DCPS refused to convene an MDT remained viable through the second hearing. The District argues that "Defendants' continuing to litigate with knowledge that A.C. left school voluntarily, that she had no re-enrolled in school until October 1, 2008[,] and that she had not requested an MDT meeting after re-enrolling in school was improper. . ." Pl.'s Mot. Summ. J. at 26. The Court disagrees. The District's offer to convene an MDT meeting for A.C. was always predicated upon her re-enrollment, a condition that was not required by the IDEA. As

such, A.C. was neither required to re-enroll before requesting an MDT nor required to re-request an MDT after her re-enrollment.

The Court finds that defendant did not file a complaint that was "frivolous, unreasonable, or without foundation," nor "continued to litigate after the litigation clearly became frivolous, unreasonable, or without foundation . . . ." The Court therefore declines, in its discretion, to award DCPS attorneys' fees.

## CONCLUSION

For the reasons stated above, the summary judgment motion of the District [#7] is denied and the summary judgment motion of West and James E. Brown and Associates [#17] is granted. The District's motion to strike Blaeuer's motion to dismiss [#13] is denied as moot. Blaeuer's motion for summary judgment [#19], which is incorporated by reference in her motion to dismiss [#12], is granted. An appropriate order accompanies this opinion.


Henry H. Kennedy, Jr.
United States District Judge